UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EPHRAIN RELIFORD, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-482 |
| | § | |
| DEAN J CRAIG, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Ephrain Reliford, proceeding *pro se* and *in forma pauperis*, alleges that defendants Dean Craig, Michael Gonzales, and D. Mendoza[1] violated his civil rights by seizing his property during his arrest on a misdemeanor drug charge and failing to return it in a timely manner. Plaintiff also objects to a forfeiture proceeding that is pending in state court. Pending is Defendants' motion for summary judgment (D.E. 18) to which Plaintiff responded on November 9, 2017 (D.E. 26).[2] For the reasons set forth below, it

---

[1] Plaintiff requested service on Craig, Gonzales, and Mendoza by the United States Marshals Service and his request was granted on June 15, 2017 (D.E. 9, 12). Plaintiff named Atlee M. Parr, assistant district attorney of Kleberg County, as a defendant on July 3, 2017 (D.E. 14, 19). In his response to the motion for summary judgment, Plaintiff claims that he has twice asked that Parr be added as a defendant and served (D.E. 26). Although Plaintiff named Parr as a defendant in pleadings on July 3 and August 15, 2017, (D.E. 18), the record does not show that Plaintiff requested that Parr be served by the Marshals and Parr has not been served.

[2] Defendants filed their dispositive motion as one for dismissal under Fed. R. Civ. P. 12(b)(6). However, because they included documents outside the pleadings, the motion was converted to a motion for summary judgment and Plaintiff was given additional time to respond (D.E. 23).

is recommended that Defendants' motion be granted, and further that all claims against all Defendants be dismissed.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## BACKGROUND

The following facts are taken from Plaintiff's third amended complaint (D.E. 19) and the evidence in the record, viewed in the light most favorable to him. On October 10, 2015, Kleberg County law enforcement officers searched Plaintiff's apartment pursuant to a search warrant and confiscated items and currency. Plaintiff was arrested and charged with drug offenses. He eventually pleaded guilty to the Class B misdemeanor offense of possession of a dangerous drug and the other charges were dismissed. An order of deferred adjudication was entered on May 18, 2016 and Plaintiff was placed on community supervision for six months (Ex. A to Mot. for Sum. Jmt., D.E. 18-1 at p. 1).

The Kleberg County Sheriff's Office (KCSO) prepared an inventory of items taken during the search, including the following, best described as contraband or evidence: drugs, papers believed to contain Plaintiff's client lists, records of wire transfers, a cloth device used to hide drugs on the body, a scale, plastic baggies, and miscellaneous paperwork. In addition, the following items were described on the inventory list: two small chests with miscellaneous items, including United States currency totaling $3,980.19; a bank checkbook; a driver's license; an ice chest; a cell phone; a passport; and miscellaneous items (D.E. 8, pp. 5-6).

On October 28, 2015, the State of Texas filed a notice of forfeiture of $3,979.27 seized during the search. The action was brought under Chapter 59 of the Texas Code of Criminal Procedure and is pending. An affidavit in support of the forfeiture signed by Defendant Gonzales, who worked for the KCSO, was filed at the same time (D.E. 18-4).

In May 2016, after the order of deferred adjudication was entered, Plaintiff met with Defendant Mendoza of the KCSO and requested return of the property that had been seized. Mendoza told Plaintiff that Defendant Craig, an assistant Kleberg County attorney, would have to sign a release of property form showing that the case was no longer pending.

On May 25, 2016, Plaintiff made a written request that all his property except the medications be returned to him because it was not used as evidence in any criminal case and was not contraband. Defendant Craig responded that he had discretion regarding whether to return the property to Plaintiff and did not intend to return the property. Notwithstanding Craig's response, on July 8, 2016 he authorized release of a driver's license and a passport to Plaintiff. On August 11, 2016 Plaintiff signed a release indicating that he had picked up the items (D.E. 18-2).

On January 5, 2016[3] Plaintiff was allowed to view the inventory list that was prepared in October 2015. Plaintiff noted that not all items that were seized were listed on the report; that the report was prepared three days after the seizure; there were no witnesses to the seizure; and a chain of custody was not prepared. Defendant Gonzales

---

[3] In Plaintiff's complaint he wrote that he viewed the list on January 5, 2015. This date is presumed to be a typographical error because it predates the seizure of the items.

told Plaintiff that he would not be getting any of the items back so it did not matter whether they were listed.

On November 9, 2016, Plaintiff filed his original complaint in this matter, alleging that Defendant Craig had refused to return two Lowes credit cards valued at $650 and $468 respectively, and a man's gold and diamond ring valued at $1,600 (D.E. 1 at p. 4). In his first amended complaint Plaintiff alleged that Gonzales also had failed to return two university identification cards valued at $40 (D.E. 8 at p. 2).

On February 1, 2017, a Kleberg County assistant district attorney informed Defendant Gonzales that he could release to Plaintiff's attorney the Lowes credit cards, a man's gold and diamond ring, one iPhone 5s, and one cooler. In a release signed on February 13, 2017 Plaintiff indicated that he had picked up the items (D.E. 18-3).

Based on the foregoing, Plaintiff alleges the following causes of action: (1) Atlee Parr, the assistant district attorney who initiated the civil action to seize the currency, violated his constitutional rights under the Fourth Amendment and his due process rights under the Fourteenth Amendment; (2) Defendant Craig violated Plaintiff's Fourth Amendment and due process rights when he refused to return property that was not used in the criminal proceeding and was not contraband; (3) Defendants Gonzales and Mendoza violated Plaintiff's Fourth Amendment and due process rights when they failed to properly inventory and document the items seized, failed to leave an inventory list at Plaintiff's residence, and failed to provide a chain of custody in regard to the seized items; (4) Defendant Gonzales violated Plaintiff's Fourth Amendment and due process rights when he prepared the search warrant based on false and unreliable information and

lacked probable cause for the search. Plaintiff seeks the return of all his property with the exception of his medications; injunctive and declaratory relief setting forth changes or enforcement of policies regarding release of property; and nominal and punitive damages.

In their motion for summary judgment, Defendants argue the following: (1) Plaintiff's causes of action are moot because all of the property which can be legally returned to Plaintiff has been returned; (2) The asset forfeiture case is still pending in state court which precludes release of the currency to Plaintiff; (3) Plaintiff has failed to state a claim for a constitutional violation; (4) Defendant Craig is entitled to prosecutorial immunity; and (5) Defendants Craig, Gonzalez, and Mendoza are entitled to qualified immunity.

In Plaintiff's response he argues that Defendants (1) did not address the issue of the illegal search warrant; (2) did not address allegations against Defendants in their official capacities; (3) did not address the application of the Declaratory Judgment Act, 28 U.S.C. § 2201-02, to Chapter 59 of the Texas Code of Criminal Procedure; and (3) did not address the fact that Defendants have items belonging to Plaintiff that are not on the evidence inventory list. Plaintiff further notes that Parr is "missing as a defendant" and that Plaintiff has twice requested that Parr be served and added as a defendant.

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action.

*Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court will not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings. *See Celotex*, 477 U.S. at 324; *Caboni*, 278 F.3d at 451; Fed.R.Civ.P. 56(e). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Caboni*, 278 F.3d at 451.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Milchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pleaded the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.*

Plaintiff cannot rest on the pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazen v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

### B. Forfeiture Proceeding in State Court

Contraband may be forfeited pursuant to Texas Code of Criminal Procedure art. 59.01 when certain conditions are met. Plaintiff argues that his misdemeanor adjudication of possession of a dangerous drug is not one of the listed conditions under which the funds seized from his apartment can be forfeited. Plaintiff does not appear to argue that the statute itself is unconstitutional, but rather that it is being misapplied to him in such a way that it violates his Fourth Amendment and due process rights. He seeks declaratory relief and appears to be asking that the forfeiture action be dismissed and the currency returned to him.

However, the forfeiture case is pending in state court and "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme Court]." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287 (1970). "In [*Younger v. Harris*, 401 U.S. 37, 45 (1971)], the Supreme Court made clear 'that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions.'" *Duke v. State of Texas*, 477 F.2d 244, 248 (5th Cir. 1973).

> This interdiction of federal interference in state judicial proceedings is based on federalism concepts of comity and respect for state functions. . . . In order to overcome it two express pre-conditions must be shown before relief may be

granted to a federal plaintiff. First, the moving party must demonstrate that he will suffer irreparable injury if the federal court stays its hand, and second the moving party must demonstrate that he does not have an adequate remedy at law in state court.

*Id.* (citing *Younger*, 401 U.S. at 44). The *Younger* principles of equity, comity, and federalism apply equally to federal intervention in civil as well as criminal proceedings. *Id.* The principles also apply to requests for declaratory relief. *DeSpain v. Johnston*, 731 F.2d 1171, 1175 (5th Cir. 1984).

Plaintiff in this case has neither argued nor offered any evidence that absent federal intervention he will suffer an irreparable injury or that he does not have an adequate remedy in state court. Without doing so there is no basis for federal intervention in the state court forfeiture proceeding. Accordingly, it is recommended that summary judgment be entered for Defendants on this cause of action.

It is noted that Plaintiff names Parr, the assistant district attorney who initiated the forfeiture proceedings, as the Defendant on this cause of action and Parr has not been served. *See supra* note 1. Nevertheless, it is recommended that this cause of action be dismissed because Plaintiff cannot maintain a cause of action against Parr based on these facts. 28 U.S.C. § 1915(e)(2)(B)(i) and 1915(e)(2)(B)(ii).

### C. Claim is Moot

Defendants also argue that Plaintiff's causes of action are moot because all the personal property which can be returned to him has been returned to him. Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies," and an actual controversy must exist at all stages of review. *Campbell-Ewald Co. v. Gomez*, 136

S.Ct. 663, 669 (2016). An intervening circumstance depriving a plaintiff of a personal stake in the outcome of the lawsuit at any point in the litigation makes the cause of action moot and it must be dismissed. *Id.* However, a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. *Id.* If a party has a concrete interest, no matter how small, in the outcome of the cause of the action, the case is not moot. *Id.*

Plaintiff claims Defendants have admitted that they possess items that were not on the inventory list and that they still have jewelry and other valuable items that are not on the evidence list. However, the record does not show any such admission and Plaintiff does not describe the items he believes to be in Defendants' possession. The only item on the inventory list, other than contraband and evidence, that does not appear to have been returned is a bank checkbook (*Compare* D.E. 8 at pp. 5-6 with D.E. 18-2 at p. 8 and D.E. 18-3 at p. 2).

Plaintiff's allegation that Defendants still have items they have not returned is conclusory and insufficient to withstand a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Nevertheless, even if Defendants have returned all the property to which Plaintiff is entitled, he seeks damages for violation of his constitutional rights. Because those claims were not extinguished by the return of the property, this litigation is not moot and should not be dismissed on that basis.

### D. 42 U.S.C. § 1983 Claims

To state a claim under §1983 a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and demonstrate that the alleged

deprivation was committed by a person acting under color of state law. *Moore v. Willis Independent School District*, 233 F.3d 871, 874 (5th Cir. 2000). Claims under § 1983 may be brought against persons in their individual or official capacities, or against a governmental entity. *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). "Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (citing *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)).

In an individual-capacity suit, the individual defendant may assert personal immunity defenses such as qualified immunity. Plaintiff named Gonzales, Mendoza, and Craig in both their individual and official capacities.

## 1. Qualified Immunity

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First he must claim that the defendants committed a constitutional violation under current law. *Id.* Second, he must

claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194, 121 (2001)).

For a right to be clearly established, "'the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012)(quoting *Flores v. City of Palacios*, 381 F.3d 391, 399-400 (5th Cir. 2004) and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "'If a right is clearly established enough to impart fair warning to the [defendants], then their conduct in violating that right cannot be objectively reasonable.'" *Id.* (quoting *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1002 n. 12 (5th Cir. 2003)).

### a. Claim Against Craig for Failure to Return Items

Plaintiff asserts that Defendant Craig violated his Fourth Amendment and due process rights when he refused to return the seized items even though they were not used as evidence against him and were not contraband. Plaintiff asserts that there are several items still in Craig's possession, but he does not describe the items.

The Fourth Amendment provides in relevant part that "'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated….'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992). A

"seizure" of property occurs when "'there is some meaningful interference with an individual's possessory interests in that property.'" *Id.* (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). To the extent Plaintiff is claiming that the delay in returning his property was unreasonable under the Fourth Amendment, he has failed to allege violation of a constitutional right. Although no Fifth Circuit authority was found on the issue, other circuit courts have held that a delay in return of seized property does not violate the Fourth Amendment. *See Shaul v. Cherry Valley-Springfield Cent. School Dist.*, 363 F.3d 177, 187 (2d Cir. 2004)(To the extent Constitution affords plaintiff any right with respect to a government agency's retention of lawfully seized property, it would be pursuant to procedural due process rather than the Fourth Amendment.); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003)(Fourth Amendment cannot be invoked by a dispossessed property owner to regain his property but he may have a substantive due process claim); *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999)(an initial, lawful seizure of property followed by a refusal to return the property does not raise Fourth Amendment issues).

Plaintiff did not point to any contradictory authority and even if he had, Defendants still would be entitled to qualified immunity because a conflict among circuits indicates that the constitutional right is not clearly established. *See Roe v. Texas Dept. of Protective and Regulatory Services*, 299 F.3d 395, 409-410 (2002)("It is difficult to argue that a matter of law is clearly established for state actors in this circuit where this court has not opined on the issue in question and the other circuits are in disagreement as to whether the challenged acts constitute a constitutional violation."). Accordingly, it is

recommended that summary judgment be entered for Defendants on this Fourth Amendment claim.

Plaintiff also asserts that the failure to return the property violated his right to due process. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). A claimant must either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson*, 468 U.S. at 534-35.

Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). Because Texas law provides an adequate post-deprivation remedy, Plaintiff's loss of his personal property does not state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy).

Plaintiff in this case has not shown either that he attempted to use state court remedies for damages he suffered because of the delay of his property, or that such remedies were inadequate or ineffective. Without doing so, he cannot show that his due process rights were violated and it is recommended that summary judgment be entered for Defendant Craig on this issue.

### b. Claims Against Gonzales and Mendoza for Failing to Properly Document Search and Seizure of Items

Plaintiff asserts that Defendants Gonzales and Mendoza violated his Fourth Amendment and due process rights when they failed to properly inventory and document the items seized, failed to leave an inventory list at Plaintiff's residence, and failed to provide a chain of custody in regard to the seized items. However, these allegations do not state a claim for a constitutional violation. Rather, they are allegations that the Defendants did not follow proper procedures. "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

Plaintiff has pointed to no authority and none was found that the failure of an official to provide a written inventory or document a chain of custody of seized items violates the Fourth Amendment. Without doing so, he cannot overcome Defendants' assertion of qualified immunity because he cannot show that they committed a constitutional violation or that their actions were objectively unreasonable in light of clearly established law. Accordingly, it is recommended that summary judgment be entered for Gonzales and Mendoza on this Fourth Amendment claim.

Plaintiff also alleges that the failure of Gonzales and Mendoza to properly document the seizure violated his right to due process. However, it is well-settled that an official's failure to follow the agency's own policies, procedures, or regulations does not constitute a violation of due process if constitutional minima are nevertheless met. *Myers*, 97 F.3d at 94. Because Plaintiff has failed to show that a fact issue exists with regard to whether Gonzales and Mendoza violated his right to due process, it is recommended that summary judgment be entered for them on these claims.

### c. Claim Against Gonzales Based on Search Warrant

Plaintiff claims that Defendant Gonzales violated his Fourth Amendment and due process rights when Gonzales prepared an affidavit containing false and unreliable information to procure the warrant to search Plaintiff's home and that Gonzales lacked probable cause for the search. Plaintiff further claims that the search of his home did not reveal any of the items Gonzales stated would be found in the home. At the time Defendants filed their motion to dismiss, Plaintiff had not yet alleged that the search was based on false and unreliable information and so Defendants did not address the allegation (*See* D.E. 18 and 19). Defendants did, however, state that Plaintiff was not attacking the validity of the search warrant (D.E. 18 at p. 4).

Notwithstanding that the issue has not been addressed by the parties, the Court may address the issue *sua sponte* pursuant to Fed. R. Civ. P. 56(f) as long as the adverse party had adequate notice to come forward with all of its evidence. *J.D. Fields & Co., Inc. v. U.S. Steel Intern., Inc.*, 426 Fed. Appx. 271, 280, 281 (5th Cir. 2011). Plaintiff in this case had notice that Defendants' motion to dismiss was going to be treated as a

motion for summary judgment and thus had an opportunity to respond to the grounds for denial of his claims, including Defendants' assertion that Plaintiff was not challenging the validity of the search warrant (D.E. 18 at p. 4).

A valid search warrant may be issued only upon a finding of probable cause and the information necessary to show probable cause must be contained within a written affidavit given under oath. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). Whether probable cause exists is analyzed looking at the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-231 (1983). "A police officer seeking the issuance of a warrant must present an affidavit containing facts sufficient to 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006)(quoting *Gates*, 462 U.S. at 239). Qualified immunity does not protect officers who maliciously or recklessly represent or omit material information when presenting information to procure a warrant or indictment. *See Hale v. Fish*, 899 F.2d 390, 402 (5th Cir. 1990)(court upheld denial of qualified immunity based on affidavit submitted in support of arrest that contained material misstatements and omissions of such character that no reasonable officer would have submitted it to a magistrate).

A plaintiff alleging unlawful search and seizure based on a falsified affidavit must show that a defendant knowingly provided false information or gave false information in reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). He must point out specifically the portion of the affidavit that is claimed to be false and explain why it is false. *Id.*

Plaintiff has not described what was false about the affidavit prepared by Defendant Gonzales or compared the items expected to be found with the items actually seized under the warrant. Without doing so, he cannot show that a fact issue exists regarding whether the search warrant was based on false or unreliable information or show that Gonzales lacked probable cause for the search. Accordingly, it is recommended that summary judgment be entered for Gonzales on this cause of action.

The same is true for any due process claim Plaintiff might have based on the allegedly false affidavit. Without factual allegations regarding the content of the affidavit, Plaintiff cannot maintain a cause of action against Defendant Gonzales and it is recommended that summary judgment be entered for him on this claim.

### 2. Prosecutorial Immunity

Defendant Craig also argues that he is entitled to prosecutorial immunity on Plaintiff's claims. "A prosecutor enjoys absolute immunity when his actions are 'intimately associated with the judicial phase of the criminal process.'" *Loupe v. O'Bannon*, 824 F.3d 534, 538 (5th Cir. 2016)(quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

> Absolute prosecutorial immunity is meant to "protect[ ] the prosecutor from harassing litigation that would divert his time and attention from his official duties" and to "enable[e] him to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" [*Kalina v. Fletcher*, 522 U.S. 118, 125 (1997)] (quoting *Imbler*, 424 U.S. at 424). . . . The Supreme Court has made clear that "it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance." *Id.* Thus, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259 . . . (1993).

*Loupe*, 824 F.3d 534, 539 (2016). When deciding whether a defendant is entitled to absolute immunity, a court applies the functional approach, looking at the nature of the function performed rather than the identity of the actor who performed it. *Id.* Actions protected by absolute immunity include initiating and pursuing a criminal prosecution, court actions taken in a prosecutor's role as advocate for the state, or when his conduct is "'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Hart v. O'Brien*, 127 F.3d 424, 439 (5th Cir. 1997), *abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775-76 (5th Cir. 1999)). Conversely, a prosecutor is entitled only to qualified immunity "for acts performed in the course of 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Id.* (quoting *Buckley*, 509 U.S. at 273).

Applying the functional approach to Plaintiff's claims that Craig failed to return his property in a timely manner, it does not appear that Craig would be entitled to prosecutorial immunity because the decision not to return the property was not based on conduct intimately associated with the judicial phase of Plaintiff's case. Rather, Craig delayed returning property that was not contraband or used as evidence after the case had terminated, which is more accurately described as an administrative function. Accordingly, he is not entitled to prosecutorial immunity, but, as discussed above, is entitled to qualified immunity for those actions.

### 3. Suits against Defendants in their Official Capacities

Plaintiff asserts that all defendants are being sued in their individual and official capacities. A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In order to show that Kleberg County was liable for any constitutional violation based on Plaintiff's allegations regarding the search warrant, seizure of his property or delay in returning the property, Plaintiff will have to show that any constitutional deprivations were caused by (1) an official policy or custom; (2) promulgated by the municipal policy-maker; (3) that was the moving force behind the violation of his constitutional rights. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(citing *Monell,* 436 U.S. at 694). Municipal liability cannot be established on the basis of respondeat superior. *Monell*, 436 U.S. at 694. A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it "through some official action or imprimatur." *Piotrowski*, 237 F.3d at 578.

Official policy can arise in various forms. It may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policy maker. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(en banc). Or, it may arise in the form of a wide-spread practice that, while unofficial, is "so common and well-settled as to constitute a custom that fairly represents municipal policy. *Piotrowski*, 237 F.3d at 579 (quoting *Webster,* 735 F.2d at 841). When a plaintiff alleges that a county is liable for a constitutional violation for failure to train officers, liability attaches

"[o]nly where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

*Id.* at 390-391. It is not enough to show that a training program has been negligently administered or that an incident could have been avoided if an officer had more or better training. *Id.* at 391.

First, as discussed above, Plaintiff has not made allegations sufficient to create a fact issue regarding whether the individual defendants violated his constitutional rights. In addition, Plaintiff has not alleged that Kleberg County failed to train officers on how to prepare or conduct search warrants or the proper disposition of property once a case has concluded. He has done nothing more than assert in a conclusory fashion that they are liable in their official capacities. Therefore, it is recommended that summary judgment be entered for Defendants where Plaintiff is suing them in their official capacities.

## CONCLUSION

For the reasons set out above, Defendants' motion to dismiss, construed as a motion for summary judgment (D.E. 18) should be GRANTED and summary judgment should be entered for all Defendants on all of Plaintiff's claims. It is further recommended that any claims against Defendant Parr be *sua sponte* dismissed pursuant to

28 U.S.C. § 1915(e)(2)(B)(i) and 1915(e)(2)(B)(ii) because it is undisputed that there is a civil forfeiture action pending in the state courts.

Respectfully submitted this 22nd day of November, 2017.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).